UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-CR-0148-CVE |
| | ) | |
| ARTEMUS DEONTE MATTHEWS, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Now before the Court is Defendant's Motion to Suppress and Brief in Support (Dkt. # 12). The government filed a response in opposition to defendant's motion to suppress (Dkt. # 14). A suppression hearing was held on October 28, 2010.

**I.**

On the evening[1] of July 1, 2010, Corporal Brian Blair and Officer James Bohanon[2] of the Tulsa Police Department Gang Unit were on patrol in The Meadows Apartments, an apartment complex in east Tulsa belonging to the Tulsa Housing Authority that had recently been the site of gang activity and shootings. They were in an undercover vehicle, but both were wearing Class C police department uniforms.[3] During his investigation of an apartment in the complex, Bohanon noticed two men standing next to a vehicle with loud music playing. He further observed one of the

---

[1]  The events took place before sunset, at approximately 8:00 p.m.

[2]  Officer Bohanon has been an officer with the Tulsa Police Department for nine years, and has spent the past three as a member of the gang unit.

[3]  The Class C uniform includes a jersey with the words "Tulsa Police" printed across the front, as well as identifying patches on the shoulders.

men look around the apartment complex and reach into the vehicle several times. Bohanon found this behavior to be suspicious given the area and circumstances, and he contacted Steven Sanders, another gang unit officer, to ask him to investigate the men further.

Sanders arrived at The Meadows in an undercover vehicle, wearing the same Class C uniform as Blair and Bohanon. He approached the men standing by the car, who turned down their music upon his approach. Sanders engaged the men in casual conversation, and asked if they were residents of the building. The men told Sanders that they were not, and Sanders then informed them that they were required to have identification permitting them to be on Tulsa Housing Authority property. He asked them to provide identification, and both of the men gave him Oklahoma state identification cards. Identification showed the men to be Matthews and an individual named John Spencer. Sanders then returned to his car to run a warrant check on the men.

During Sanders's conversation with the men, Blair and Bohanon observed from a distance of approximately 25 yards; they began to approach at the time Sanders asked the men for identification, but Sanders had returned to his car by the time they reached the area. While Sanders was in his car, Bohanon struck up his own conversation with the men. He told them why the officers were investigating them and about his concerns regarding the neighborhood. Matthews agreed that the complex was dangerous, but said that he was there only to visit a girl in one of the apartments.

The warrant check revealed that Matthews had an outstanding warrant for his arrest.[4] Sanders returned to the area where the men and officers were standing; at approximately the same time, Officer Kevin Warne arrived on the scene as well. Sanders informed Bohanon about Matthews's outstanding warrant, after which Bohanon told Matthews that he was under arrest and

---

[4]  Spencer did not have any outstanding warrants.

2

began to handcuff him. Before Bohanon had finished handcuffing him, Matthews told Bohanon that he had a gun. Warne conducted a pat-down of Matthews's person, and found in a pocket of his pants a .22 caliber semiautomatic pistol, chamber-loaded and with a magazine containing six additional bullets. Matthews was transported to a local police station and then to the David L. Moss Criminal Justice Center by Bohanon and Sanders, and was indicted as a felon in possession of a firearm and ammunition on September 8, 2010. Dkt. # 2.

**II.**

Defendant seeks to suppress from the government's case-in-chief the firearm and ammunition seized from his person during his arrest on the ground that they are the product of a warrantless search and seizure and were obtained in violation of his Fourth Amendment rights. Dkt. # 12, at 1-2. The Fourth Amendment protects citizens from unreasonable searches and seizures conducted by either state or federal government officials. For purposes of the Fourth Amendment, the Supreme Court has recognized three types of police-citizen encounters: (1) consensual encounters which do not implicate the Fourth Amendment; (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity; and (3) arrests, "the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause." United States v. White, 584 F.3d 935, 944-45 (10th Cir. 2009)(internal citations omitted). "These categories are not static and may escalate from one to another," and the Tenth Circuit has noted courts' obligation to analyze each stage of a police-citizen encounter to ensure that the requisite level of suspicion was present. Id.

The government argues that the contact between Matthews and the officers began as a consensual encounter. Dkt. # 14, at 3. An encounter between an individual and the police is

consensual when a "reasonable person would feel free to disregard the police and go about his business." United States v. Thompson, 546 F.3d 1223, 1226 (10th Cir. 2008)(quoting Florida v. Bostick, 501 U.S. 429, 434 (1991)). In evaluating whether an objectively reasonable person would feel free to leave, the Tenth Circuit considers several relevant factors:

> the location of the encounter, particularly whether the defendant is in an open public place where he is within the view of persons other than law enforcement officers; whether the officers touch or physically restrain the defendant; whether the officers are uniformed or in plain clothes; whether their weapons are displayed; the number, demeanor and tone of voice of the officers; whether and for how long the officers retain the defendant's personal effects such as tickets or identification; and whether or not they have specifically advised defendant at any time that he had the right to terminate the encounter or refuse consent.

United States v. Spence, 397 F.3d 1280, 1283 (10th Cir. 2005). That list is non-exclusive, and no one factor is dispositive. Id. "A consensual encounter is not a seizure for purposes of the Fourth Amendment." Id.

Based on the totality of the circumstances, the Court finds that the initial contact between Officer Sanders and Matthews was a consensual encounter. Defendant was approached in the presence of another person, in a public parking lot, by one officer. Sanders's tone was conversational, and he did not touch or physically restrain the men. Sanders wore clothing identifying him as an officer, and did not inform defendant that he was free to leave. On very similar facts, the Tenth Circuit has found an encounter between a defendant and officer to be consensual. See Thompson, 546 F.3d at 1227. In Thompson, an officer approached a defendant in the parking lot of a convenience store. The defendant was unaccompanied, but was in view of other patrons. The court found that "the presence of other citizens during a police encounter is one factor suggesting its consensual nature." Id. at 1227. The court also considered the lack of physical contact or antagonistic tone between the officer and the defendant, and held that their absence

4

supported a finding that the encounter was consensual. Id. at 1227-28.  Although the officer was uniformed and had failed to advise the defendant that he was free to leave, the court found that those factors did not weigh heavily in its analysis. Id. at 1228. Applying Thompson, the conversation between Matthews and Sanders did not create a situation where an objectively reasonable person would not have felt free to terminate the encounter. Further, Sanders did not enhance the level of the encounter by asking for the men's identification, as "it is well-established that the Fourth Amendment is not implicated when an officer approaches an individual in a public place and requests, but does not demand, to see his identification." United States v. Lopez, 443 F.3d 1280, 1285 (10th Cir. 2006)(citing United States v. Mendenhall, 446 U.S. 544, 555 (1980)).

However, the encounter did escalate when Sanders took identification from the men back to his car. Once identification is retained by law enforcement officials, the consensual encounter ends, and the individual is seized for purposes of the Fourth Amendment. Id.  This is so because, as the Tenth Circuit has explained, no reasonable person having had his identification taken away would have felt free to terminate the encounter. Id.; see also United States v. Lambert, 46 F.3d 1064, 1066 (10th Cir. 1995). The warrant check transformed Sanders's encounter with Matthews into an investigatory detention. An investigatory detention "must be justified in its inception and reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Luginbyhl, 321 Fed. Appx. 780, 785 (10th Cir. 2009)(unpublished)[5]. Matthew's detention was justified only if Officer Sanders had reasonable articulable suspicion to detain him until the warrant check was completed. Lopez, 443 F.3d at 1285; see also United States v. Guerrero,

---

[5]  Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

5

472 F.3d 784, 786-87 (10th Cir. 2007)(stating that "reasonable suspicion remains the proper standard for police to take and run the defendant's license, even when the encounter begins consensually").

Reasonable suspicion is defined as "particularized and objective basis for suspecting the particular person stopped of criminal activity." Guerrero, 472 F.3d at 787. The reasonable suspicion inquiry is an objective one, and courts defer to trained law enforcement personnel in conducting that inquiry, "allowing officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." Id. Factors alleged in support of reasonable suspicion are assessed cumulatively rather than individually. Id. "It is well settled that an officer with reasonable suspicion for an investigative detention need not have ruled out all possible innocent explanations for the observed conduct." Luginbyhl, 321 Fed. Appx. at 786.

Blair and Bohanon were originally on patrol in The Meadows apartment complex because it had been the site of recent violence. Bohanon's interest in Matthews was aroused because he observed defendant looking around and reaching into a car several times. Although these actions may not, on their own, be worthy of suspicion, based on Bohanon's experience as an officer he found this behavior in a high-crime area to be indicative of criminal activity. Deferring to the judgment of the officers, Bohanon's interpretation of defendant's actions is sufficient to create reasonable suspicion that would justify an investigatory detention. See, e.g., United States v. Johnson, 2008 WL 2986405, at * 4 (D. Kan. July 31, 2008)(finding investigatory detention in form of officers' retention of defendant's license justified by reasonable suspicion in part because of the high-crime nature of the neighborhood and the officers' experience that men loitering in the manner

of the defendant were likely to be involved in drug sales). Bohanon conveyed his suspicions to Sanders when he asked him to approach the men. Thus, Sanders had objectively reasonable suspicion that Matthews was involved in criminal activity at the time he withdrew to his car with Matthews's identification.[6]

Because reasonable suspicion was present, detention of Matthews during the warrant check did not violate his Fourth Amendment rights. As those rights were not violated, suppression of the gun and ammunition seized from defendant is not warranted.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress and Brief in Support (Dkt. # 12) is **denied**.

**DATED** this 1st day of November, 2010.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[6] Even if the initial encounter were not consensual, it would have been justified as a stop under Terry v. Ohio, 392 U.S. 1 (1968). Under Terry, "[a]n investigative detention of limited scope and duration does not require probable cause so long as the officer has a reasonable suspicion that the person being detained is engaged in criminal activity." United States v. Alvarado, 154 Fed. Appx. 730, 732 (10th Cir. 2005)(unpublished). Although a Terry analysis would require reasonable suspicion from the time the encounter began, as opposed to when Sanders withdrew to his car with Matthews's identification, the evidence relied on for reasonable suspicion by the government was gained prior to Sanders's approach. Thus, Matthews's detention during the warrant check was equally justified under Terry.